Wanamaker, J.
The judgment below is affirmed upon the very able opinion of Richards, J., of the court of appeals, which contains a very plain, orderly, and well-reasoned statement of the questions of law in this case, as follows:
"The plaintiff in error, David A. Barnett, was indicted for the crime of sodomy committed on the person of a little girl six and a half years of age, and was tried and convicted.
“Many errors are claimed to have been committed at the trial and on the hearing of a motion for a new trial, which it is insisted require a reversal of the judgment. There are, however, but two of these assignments of error that require special discussion by the court, and these are, first, in admitting, for the purpose of identifying the defendant, the testimony of certain children of tender years, showing other similar conduct, and, second, the weight of the evidence, particularly relating to the defense of alibi on which the defendant relied. These are the two important, outstanding questions on which this case must be decided.
“The evidence introduced on behalf of the state tended to show that on December 1, 1920, the little girl who is the prosecuting witness, was on her way home from school in the city of Toledo, shortly after *300 10:45 o’clock a. m., and that she was accosted by a man in an automobile who asked her if she did not want to take a ride. On his insistence she got into the machine and was driven into an unfrequented place in the suburbs of the city where the crime of sodomy was committed, in the automobile, against the will of the child. He thereupon drove back into the vicinity of her home and she got out and walked home, arriving there about twenty minutes before twelve o’clock noon.
“The testimony of this child positively identifies the defendant, with as much certainty as could be expected of a child of her age, as the man who committed the crime. On the trial of the case it was admitted that the crime had been, in fact, committed, but denied that the defendant was the guilty person. The question, therefore, of the identity of the defendant became one of vital importance in the case and to substantiate that identity the state called and examined as witnesses six or eight little girls, varying in ages from six to ten years. The competency of the little girl who is the prosecuting witness, and of these other little girls who were called as witnesses by the state, is challenged by the defendant. -
“Each of them was examined as to her competency before being permitted to testify and the record of that examination fairly discloses that they were capable of receiving just impressions of the facts and transactions respecting which they were examined, and of relating them truly, and they appeared to understand the nature of an oath and the penalties for its violation. The examination of these young girls plainly indicates that they were *301 competent witnesses. The trial judge, who saw the children and heard their testimony and passed on their competency, was in a far better position to judge of their competency than is this court, which only reads their testimony from the record, and that record certainly does not show any abuse of discretion on the part of the trial judge in holding them to be competent witnesses. 28 R. C. L., 463, 465.
“It is insisted that the trial court erred in admitting testimony from these children of other crimes of like character committed or attempted by the defendant on them and the question of the admissibility of this evidence has received the most careful consideration of this court. This class of testimony was admitted to go to the jury solely on the claim that it aided in identifying the defendant as the person who was guilty of the offense committed on the prosecuting witness. The trial judge clearly and explicitly stated to the jury more than once the reason for the admission of this evidence, and the only purpose for which it was competent. In so doing he used the following language:
“ ‘The evidence is competent only as an identifying mark. If you find in this evidence some peculiarity by which you are able to distinguish this defendant from other men and to identify him as the doer of the wrong described by the prosecuting witness, this evidence is received for that purpose and that alone. You will not consider the facts that another offense may have been committed and judge the guilt or innocence of the defendant upon this indictment by those facts, but I will say to you for the third time, it is to be received only* and you will use it only as a means of identification, *302 as a means by which through evidence the state may point out to you the person who did that which the prosecuting witness has described.’
“Unless the testimony is competent on the subject of identity it is clearly not competent for any purpose whatever. That testimony tends, to show that upon divers occasions shortly before and after the time of the offense charged in the indictment, a man identified as the defendant Barnett, invited each of them on a separate occasion, to ride with him 'alone in an automobile. This automobile was a one-seated roadster and the evidence discloses that the machine which the defendant habitually drove was a Dodge roadster having one seat.
“According to the testimony of these girls, the general, but not universal, practice was that they would be invited, at or near a schoolhouse, to ride, and on the trip the defendant would undertake his lecherous practices. Two of the girls failed to •identify the defendant as the man who had invited them to ride. In the ease of one of these little girls who failed to identify the defendant, the license number of the car in which she rode was taken by another witness and shown to be the number borne by the ear usually driven by the .defendant. The testimony of the girl who rode in the car on that occasion shows the same lecherous practices as testified to by the other children. Several little girls j were called as witnesses who lived adjoining the residence of the defendant and were acquainted with him. Some of those girls testified to lascivious conduct on his part, not going to the extent of the commission of sodomy, but others of those children acquainted with him testify that there was no improper conduct on his part when they were riding *303 with him. Is that class of evidence competent as tending to identify the defendant? Certainly it bore with heavy weight against the defendant, and, if incompetent, was highly prejudicial.
“Any physical characteristic has always been received in evidence as a valuable aid to the courts on questions of identity. The matter of identifying by means of finger-prints has been developed by the Bertillon system until it has become marvellously accurate. A drooping eyelid, a halting step, a peculiarity of speech, may all furnish important evidence on identity. The law will not suffer itself to be handicapped by limiting the means or methods of identification to physical characteristics. Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and is none the less competent evidence because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove, and facts of that character, when weighed with the other evidence may justify the jury in finding identity to be established beyond a reasonable doubt.
“No rule of criminal law is more firmly established than that, in general, evidence that the defendant committed at another time an independent crime not charged in the indictment, although of the same nature, does not in and of itself even tend to show that he is guilty of the crime charged, but it is equally well settled that this general rule has some important exceptions and these exceptions include cases where motive, intent or identity is involved. *304 It is quite true that the exceptions which have been established ought not to be enlarged and the courts should exercise great caution in admitting evidence under any one of the recognized exceptions. If the testimony of these children, other than the prosecuting witness, does not tend to identify the defendant as the person who committed the crime charged in the indictment, it was manifestly incompetent and prejudicial. It seems, however, to the court, that such evidence does tend to identify the accused as the one who committed the offense set forth in the indictment. The weight of the evidence of course would be for the jury. 1 Wigmore on Evidence, Sections 412-413; 22 R. O. L., 1204; Miller v. Oklahoma, L. R. A., 1917-D, 383; State v. LaPage, 57 N. H., 245; and State v. Reineke, 89 Ohio St., 390, 398.
“These are but a sample of authorities which enunciate or apply the principle. In R. C. L., cited supra, the learned author of the article, after announcing the rule prohibiting evidence of other offenses, states that the rule should not be followed blindly and that evidence should not be rejected on the sole ground that it shows the commission of another crime and that evidence of another crime is .admissible when it tends to identify the accused. With full realization of the importance of this class of testimony and of the weight with which it bears against the defendant, we are convinced that it is competent evidence in this case on the question of identity and that no error was committed in its reception.”
The remainder of the opinion of the court of appeals is devoted to reviewing the weight of the evidence, in which we are not concerned.
*305 Supplementing this excellent opinion, it is self-evident that the crime of sodomy was committed by someone; that a moral degenerate committed it; and that the particular type of degenerate engaged in the commission of that crime was a sexual pervert.
It is more or less a matter of common knowledge among those who have made a study of sexual perversion as it manifests itself in human degenerates that each sexual pervert follows some habitual, unnatural method of gratifying his perverted passion. It may be unnatural commerce with one class of beasts or another class of beasts; it may be by one mature male upon another mature male; and it may be, which is today of too frequent occurrence, a degenerate sexual commerce with little hoys or little girls.
Just as the professional bank robber uses habitually certain methods in his course of criminal conduct, so the sexual pervert, as a general rule, confines himself to a certain limited line, a certain habitual form of sexual degeneracy, from which he rarely, if ever, departs; and those methods that ho habitually employs leave their indicia, their footprints, or fingermarks, their traces, in one form or another, of his personal criminal identity.
If now the trial judge used the word “identity” in that broad sense, and the jury so understood it, there could be no possible error as against the defendant. The only tendency would be in the mind of the jury to unduly limit the word “identity,” and give it its narrow and customary use, which would too strictly limit it to the name or physical identity of the person in question. Here, however, the word “identity” must be used in its broad, gen *306 eral sense, referring not only to the defendant himself, who is presumed to be innocent, but likewise to the slimy, bestial, lascivious trail of the man who committed the crime in question, which crime so frequently committed during the year 1921 in Lucas county had struck terror into the hearts and homes of the women and children of that county, like that of “Jack the Ripper” of old.
But, what is relevant evidence? What do we mean by the term, as used in due process of law? Let us get back to some first principles. Jeremy Bentham’s old definition can hardly be improved on today:
“Any matter of fact, the effect, tendency, or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact — a persuasion either affirmative or disaffirmative of its existence.”
Grreenleaf’s definition is:
“All the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved.”
It is fundamental in reason and logic that when any fact has a causal connection or logical relation to another fact, so as to make the other fact either more or less probable, the first fact is competent, or is relevant, to prove the second; or, if the absence of either tends to show the absence of the other, by reason of their relation, then it is equally competent for such purpose if the absence or presence of the other fact be in issue. Any fact that makes more probable or less probable, where the probabilities are in question, renders such fact relevant as evidence, unless there be some positive, arbitrary rule *307 declared by competent authority, such as a statute, or á long line of judicial decisions, based upon reason, to the contrary.
Jones, in the first volume of his excellent work, Commentaries on Evidence, deals with this subject of the relevancy of other crimes to prove the crime charged in the affidavit, information or indictment. Beginning with Section 143, where he quotes Bishop on Criminal Procedure as to the general doctrine, he continues as follows:
“It is, that though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; and it is also admissible if it really tends thus, as in the facts of most cases it does not, to prove the act itself.”
This doctrine has been applied by substantially all the courts whenever there has been a fraudulent intent in connection with property, such as uttering counterfeit money, receiving stolen property knowing it to have been stolen, embezzlement, obtaining property by false pretenses, and the like.
The courts are practically uniform in admitting evidence of that character as between the defendant and other persons not too remote, as tending to show the system, means, or method of operation, having common characteristics, and all pointing to the guilt of the defendant. Touching this general doctrine, Jones, in Section 144, Volume I, observes as follows:
*308 “A man who has formed the plan of attempting [attacking] the chastity of women, and carried it into effect by a series of crimes can be and should be no more protected than the one who has planned to financially victimize the inhabitants of a locality.”
To illustrate, here is a man in charge of the cloak department of a store. He fraudulently converts property of his employer to his own use. He is charged in an indictment with having converted a certain fur coat on a certain day, of a certain value, to his own use, which coat was then the property of the owner and in the custody of the defendant.
If other similar offenses are competent, as the authorities generally hold, to show a fraudulent intent in the wrongful taking of property, why should not other offenses be equally competent to show the degenerate intent in the wrongful taking of virtue,, and even the lives of little children?
The distinction drawn by some courts as to these two different wrongful takings is a distinction without a difference, except that the public welfare and public virtue should have at least equal protection to private property.
It was said nineteen centuries, ago:
“Is not the life, more than meat, and the body than raiment?” (Matt. 6:25.)
A twentieth century court would hardly feel at liberty to reverse such a. wholesome doctrine when applied to such a concrete case as the one at bar.
The precise question here has never been adjudicated in this court. The nearest approach to it is the case of State v. Reineke, 89 Ohio St., 390. The syllabus of that case reads:
*309 . “In sexual crimes with consent, including incest, other and similar adulterous or licentious acts or conduct by the defendant toward the prosecutrix, whether prior or subsequent to the date of the specific act charged in the indictment, are, if not too re;mote, admissible for the purpose of showing the adulterous or incestuous disposition of the defendant toward the prosecutrix and the illicit and continuous sexual relations existing between them.”
In the opinion to sustain the judgment therein entered it is said, at page 391:
“It is an elementary proposition of law, both sound and humane, that a person may not be convicted of the crime charged upon a certain date by showing that upon other dates, previous or subsequent, he committed other crimes and offenses. But this rule has many exceptions in certain particular lines of cases as to prior acts.”
Among those exceptions, the opinion notes the following :
“3. Where the various acts show a general scheme or system of criminal conduct.
“4. In what are known as ‘sexual crimes,’ such as a continuous adultery or fornication, criminal conversation, incest and the like.”
It will be noted that the doctrine announced in the syllabus suggests at least that there be mutuality between the parties of adulterous or incestuous disposition, or at least that such disposition shall be manifest in all cases toward the prosecutrix. But in the case at bar these little innocent children between six and ten years of age are of course incapable of such disposition; but that in no wise should absolve or immune the defendant from hav *310 ing Ms disposition proven in that behalf toward children of such tender or innocent years.
Lord Coke said many years ago:
“Season is the life of the law: nay, the common law itself is notMng else but reason. * * '* The law, which is the perfection of reason.”
How can it be said that the lascivious, bestial disposition of the male person who was habitually committing similar crimes upon little girls in Toledo and vicinity near the time charged in tMs indictment did not with reason and in common knowledge and experience point strongly toward the defendant as being the person who committed the offense charged in the indictment. It was committed by someone with an automobile bearing a certain number, absolutely identified, operating in a manner and by means substantially identical, at the same time of day, upon the pupils of a certain school and neighborhood, taken to a certain unfrequented place in or about Toledo, and repeatedly exhibiting his bestiality in Ms conduct toward these children. What we know as men, having common knowledge, or, if you please, scientific knowledge, of these sexual perverts, we cannot ignore as judges.
In the Reineke case, supra, it was said, at page 399:
“We believe the good morals of the state, the safety and security of its virtue, the protection of the home and the relation of parent and child, brother, sister, and all others within the incest statute, demand at our hands the admission of subsequent acts as. well as prior acts for the purpose aforesaid.”
*311 That was a case of incest decided in 1914, and all the judges concurred in it. The instant case is even more reprehensible, involving not only the good morals of the state, but the very lives of the little children who were daily assaulted by a moral leper who would not hesitate to go to any length that his perverted sexuality might suggest. A wild ferocious animal that has escaped with all its bestial instincts puts in panic the safety of the people of any community infested thereby, but no alarm or jeopardy of the safety, virtue, and very lives of the children of a community could be more seriously and vitally threatened than by the type of sexual pervert disclosed by this record.
Other errors have been complained of as a ground for reversal, but we believe that substantial justice has been done in this case and that the proof and the verdict are abundantly supported by the law and the evidence.

Judgment affirmed.

Marshall, C. J., Johnson, Hough and Jones, JJ., concur.